IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

SHARON ANN FORMAN, PLAINTIFF

VS. CIVIL ACTION NO. 3:03CV232-SAA

SOUTHERN MOTION, INC., DEFENDANT

**MEMORANDUM OPINION**

The court has before it the motion of defendant Southern Motion, Inc., for summary judgment. The plaintiff has filed a response to the motion, and the defendant has filed its reply. Upon due consideration of the parties' submissions and the record in this case, the court is ready to rule.

The district court's jurisdiction over these federal claims rests upon Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5(f)(3). The pendent state law claims are before the court pursuant to its supplemental jurisdiction. 28 U.S.C. § 1367. In accordance with the provisions of 28 U.S.C. § 636(c), all parties consented to have a United States Magistrate Judge conduct the proceedings in this case, including an order for entry of a final judgment. Therefore, the undersigned has authority to decide this motion for summary judgment.

**BRIEF FACTUAL SUMMARY**

In ruling on this motion, all facts are presumed to be as plaintiff recounts them. Plaintiff Sharon Ann Forman was employed by defendant Southern Motion, Inc. as a leather cutter between 1998 and 2003. Jerry Harper was plaintiff's co-worker until 2001, when he was promoted to "leadman," which placed him in a supervisory capacity over plaintiff and other Southern Motion employees. Plaintiff alleges that Harper subjected her to unwanted sexual comments and touching

beginning in 1998, when he approached her from behind while she was working and "stuck a broom up underneath from behind my table, up underneath and took the broom and put it up between my legs." (MOT. FOR SUMM. J. Ex. 4 at 8.) Although plaintiff did not report the incident to anyone, she testified that Harper bragged to Southern Motion Executive Vice President Larry Todd about the incident himself. (MOT. FOR SUMM. J. Ex. 4 at 18.) Todd denies any recollection of the event. (MOT. FOR SUMM. J. Ex. 1 ¶ 8.). Plaintiff does not claim that Harper touched her again until the second week of June 2003, when he asked if she wanted to "play a game of grab-ass" and grabbed her buttocks. (MOT. FOR SUMM. J. Ex. 4 at 29-30.) There is some dispute about the precise timing of the events in 2003, but plaintiff testified that Harper said "woohoo" and touched her buttocks again in the third week of June. (MOT. FOR SUMM. J. Ex. 4 at 31-32.) The next week, Harper again approached plaintiff at her work table, said something like "woohoo baby" and rubbed her arm. (MOT. FOR SUMM. J. Ex. 4 at 34-36.)

Plaintiff also complains of constant comments by Harper of a sexual nature, such as telling her she had a "cute booty" and asking "if I said you had a beautiful body would you hold it against me?" (MOT. FOR SUMM. J. Ex. 4 at 11-13.) Plaintiff stated:

> [H]e would joke, just joke, you know . . . . You know, just going hey, have I told you what a cute little booty you had? All this stuff, you know. Same sexual saying that he has always said. It was just a constant, constant saying thing everyday. It never changed. Same lines, and sometimes he would say a little more, go a little bit further, and a little bit further . . . . I mean, it was just whoever would pay him enough attention to stop long enough to speak, you know, to carry on or whatever.

(MOT. FOR SUMM. J. Ex. 4 at 11-12.) Harper made these comments to other employees as well. (MOT. FOR SUMM. J. Ex. 4 at 12.) It appears from plaintiff's testimony that these comments occurred often between 1998 and 2003, but Harper never touched her again until the incidents in June 2003. (MOT. FOR SUMM. J. Ex. 4 at 14.)

Plaintiff never formally reported any of the pre-2003 incidents to her supervisors, although plaintiff testified that Harper bragged about the "broom incident" to executive vice president Larry Todd soon after it happened, at which point plaintiff asked Todd, "[C]an you get Jerry to leave me alone[?]" (MOT. FOR SUMM. J. Ex. 4 at 18.) According to plaintiff, Todd did not respond other than to give Harper a "cold stare" and simply walk away. Plaintiff never complained about Harper's verbally offensive conduct at all, despite what she claims was its pervasive and unrelenting nature. Indeed, plaintiff first put her employer on notice of the June 2003 incidents in accordance with the company's sexual discrimination policy on or about July 8, 2003, when she reported the alleged sexual harassment to defendant's manager, Tommy Dodds. (MOT. FOR SUMM. J. Ex. 4 at 37.) The very next day, Harper came back to her work table and rubbed her arm again, (MOT. FOR SUMM. J. Ex. 4 at 43), and plaintiff claims she again reported Harper to Dodds. When Harper touched her again on July 10, and it appeared to plaintiff that defendant was doing nothing to make him stop, she again went to Dodds, but she also quit her job and walked out of the facility. Dodds states he met with Harper about his behavior at 8:00 a.m. on July 10, and an investigation led the company to give harper a "final warning" and instruct him "never to have any physical contact with other employees or make any inappropriate verbal comments." (MOT. FOR SUMM. J. Ex. 3.0 ¶ 7.) After receiving a phone call from Todd, plaintiff returned to the plant to discuss her allegations later in the day on July 10, and Todd promised that if she came back to work Harper would never bother her again. (MOT. FOR SUMM. J. Ex. 4 at 88-89.) However, plaintiff felt defendant had taken no action on her complaints on July 8 and 9, and she refused to return to her job because she believed defendant could not make good its promises to control Harper.

# **SUMMARY JUDGMENT STANDARD**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). "The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden." *Beck v. Texas State Bd. of Dental Examiners*, 204 F.3d 629, 633 (5th Cir. 2000) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), *cert. denied*, 484 U.S. 1066 (1988)). After a proper motion for summary judgment is made, the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby,* Inc., 477 U.S. 242, 249, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986); *Beck*, 204 F.3d at 633; *Allen v. Rapides Parish School Bd.*, 204 F.3d 619, 621 (5th Cir. 2000); *Ragas v. Tennessee Gas Pipeline Company*, 136 F.3d 455, 458 (5th Cir. 1998). Substantive law determines what is material. *Anderson*, 477 U.S. at 249. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*, at 248. If the non-movant sets forth specific facts in support of allegations essential to his claim, a genuine issue is presented. *Celotex*, 477 U.S. at 327. "Where the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.* , 475 U.S. 574, 587, 89 L. Ed. 2d 538 (1986); *Federal Savings and Loan, Inc. v. Krajl*, 968 F.2d 500, 503 (5th Cir. 1992). The facts are reviewed drawing all reasonable inferences in favor of the non-moving party. *Allen*, 204 F.3d at 621; *PYCA Industries, Inc. v. Harrison County Waste Water Management*

*Dist.*, 177 F.3d 351, 161 (5th Cir. 1999); *Banc One Capital Partners Corp. v. Kneipper*, 67 F.3d 1187, 1198 (5th Cir. 1995). However, this is so only when there is "an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994); *see Edwards v. Your Credit, Inc.*, 148 F.3d 427, 432 (5th Cir. 1998). In the absence of proof, the court does not "assume that the nonmoving party could or would prove the necessary facts." *Little*, 37 F.3d at 1075 (emphasis omitted).

## **DISCUSSION**

Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." 42 U.S.C. § 2000e-2(a)(1). The United State Supreme Court has recognized in Title VII sexual harassment cases a distinction between those based on threats that are carried out (often referred to as *quid pro quo* cases) and those where bothersome attentions or sexual remarks create a hostile work environment. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 751, 118 S. Ct. 2257, 2264, 141 L. Ed. 2d 633 (1998). By way of clarification, the Fifth Circuit has determined an approach courts should utilize following the Supreme Court's decisions in *Ellerth* and *Faragher v. City of Boca Raton*, 524 U.S. 775, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998):

> At the first stop on the *Ellerth/Faragher* road map, courts are required to determine whether the complaining employee has or has not suffered a "tangible employment action." If he has, his suit is classified as a "quid pro quo" case; if he has not, his suit is classified as a "hostile environment" case. That determination provides a fork in the road on the *Ellerth/Faragher* map: In a "quid pro quo" case, the road branches toward a second stop at which the court must determine whether the tangible employment action suffered by the employee resulted from his acceptance or rejection of his supervisor's alleged sexual harassment. If the employee cannot show such a nexus, then his employer is not vicariously liable under Title VII for sexual harassment by a supervisor; but if the employee can demonstrate such a nexus, the

employer is vicariously liable per se and is not entitled to assert the one and only affirmative defense permitted in such cases since *Ellerth* and *Faragher*. In other words, proof that a tangible employment action did result from the employee's acceptance or rejection of sexual harassment by his supervisor makes the employer vicariously liable, *ipso facto*; no affirmative defense will be heard.

*Casiano v. AT & T Corp.*, 213 F.3d 278, 283 (5th Cir. 2000).

The instant plaintiff addresses both theories in her response to the motion for summary judgment. To prevail on a *quid pro quo* claim of harassment, plaintiff must show she suffered a tangible employment action at the hands of a supervisor. *Id.* at 283-84. She contends she did suffer a "tangible employment action" because (a) her supervisors knew about and acquiesced in Harper's ongoing conduct, thereby making it a condition of her employment, and (b) Executive VP Larry Todd had told her on June 24, 2003, that he would fire her if she started any "trouble," which she interpreted as a threat of retaliation if she reported Harper's conduct. (PL.'S MEM. IN RESP. TO MOT. FOR SUMM. J. at 5; MOT. FOR SUMM. J. Ex. 4 at 40.)[1] According to the Supreme Court, tangible employment actions "require an official act of the enterprise, *i.e.*, a company act, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." *Id.* at 283 n. 6 (quoting *Ellerth,* 524 U.S. at 761-62, 118

---

[1]Plaintiff testified that Tommy Dodds actually approached *her* on July 8, 2003, to obtain her signature on an employee reprimand commonly called a "writeup" growing out of an incident on June 24, 2003. (MOT. FOR SUMM. J. Ex. 4 at 38.) In his declaration, Dodds does not indicate the date he approached plaintiff to discuss the writeup, but he recounts that he had given plaintiff a final warning for insubordination on October 23, 2002, placed a note in her personnel file about her failure to cooperate with her lead person on May 21, 2002, and asked her to sign a final warning for failure to return leather patterns to their proper place after using them on June 24, 2003. (MOT. FOR SUMM. J. Ex. 3.0 ¶¶ 9-11.)

It was while she was describing the July 8 discussion with Dodds during her deposition that plaintiff first mentioned Larry Todd had previously threatened to fire her on June 24, 2003 (MOT. FOR SUMM. J. Ex. 4 at 78), if he found out she had any more "confrontations" in or out of the plant. (MOT. FOR SUMM. J. Ex. 4 at 40.) Plaintiff claims not to have known what prompted the threat, (MOT. FOR SUMM. J. Ex. 4 at 42, 74-75.), and she expressly disavows having complained about Harper at the June 24 meeting. (MOT. FOR SUMM.J. Ex. 4 at 78.)

S.Ct. 2257). In this case, defendant claims that plaintiff cannot establish she suffered any "adverse employment action" as defined by *Ellerth*, and the court agrees. The sort of conduct plaintiff alleges is more accurately described an allegedly hostile work environment, and the case shall be addressed as such.

As plaintiff points out in her brief, in order to prove a hostile work environment claim she is required to establish that:

1. Plaintiff belongs to a protected class;
2. She experienced "unwelcome sexual harassment;"
3. "The harassment complained of was based upon sex;"
4. The harassment "affected a term, condition or privilege of her employment;" and
5. Defendant "knew or should have known of the harassment and failed to take prompt remedial action."

*Jones v. Flagship International*, 793 F.2d 714, 719 (5th Cir. 1986), *cert. denied*, 479 U.S. 1065, 93 L. Ed. 2d 1001, 107 S. Ct. 952 (1987). The first three elements are not in question here. If the actions, if proved, would not constitute a "severe or pervasive sexual harassment," Title VII imposes no liability on the employer. *Casiano*, 213 F.3d at 284. Accordingly, the court is required to next examine whether Harper's alleged conduct was sufficiently severe or pervasive to create an actionable hostile environment.

The Supreme Court has explained that "in order to be actionable under the statute, a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher*, 524 U.S. at 810 (citing *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21-22, 114 S. Ct. 367, 370-371, 126 L. Ed. 2d 295 (1993)). In order to determine whether an environment is sufficiently hostile or abusive to meet the requisite standard, the Court directed trial courts to examine all relevant circumstances, including the "frequency of the discriminatory conduct; its

severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* (citation omitted).

In this case, the plaintiff complains of some five (5) incidents of touching over a five-year period, in addition to more constant verbal comments of a sexual nature. Although Harper clearly intended to grab and touch plaintiff's buttocks on two occasions, the court finds that the facts at bar are akin to those in *Hockman v. Westward Communications, LLC*, ___ F.3d ___, No. 03-41620, 2004 WL 3266790, at *7-8 (5th Cir. Dec. 22, 2004), a case cited in defendant's reply brief. In that case, the court was confronted with the following allegations concerning the defendant:

> (1) he once made a remark to Hockman about another employee's body, (2) he once slapped her on the behind with a newspaper, (3) he grabbed or brushed against Hockman's breasts and behind [albeit perhaps inadvertently], (4) he once held her cheeks and tried to kiss her, (5) he asked Hockman to come to the office early so that they could be alone, and (6) he once stood in the door of the bathroom while she was washing her hands.

*Hockman*, 2004 WL 3266790, at *8. The instant plaintiff complains that Harper touched her with a broom in 1998, then touched her buttocks twice and rubbed or grabbed her arm on more than one occasion in 2003. Additionally, Harper made repeated comments about plaintiff's body and asked questions like "hey, baby, you want to?" and "do you want to get married?" (MOT. FOR SUMM. J. Ex 4 at 14.) While these comments were humiliating and would be inappropriate in any environment, the court is not satisfied that a reasonable trier of fact could find that the alleged conduct was sufficiently severe or pervasive to meet the Title VII burden. As the court found in *Hockman*, Harper's comments were "boorish and offensive, but not severe," and even the touching realistically amounted to "'simple teasing,' which 'will not amount to discriminatory changes in the "terms and conditions of employment."'" *Id*. (quoting *Faragher*, 524 U.S. at 788). The court does not condone Harper's behavior in this case, but it does not arise to the level of conduct Title VII was crafted to

8

address.[2]

Plaintiff has also alleged that defendant is liable for intentional infliction of emotional distress and negligent retention and supervision of Harper. Despite plaintiff's protestations, the undersigned cannot conclude that Harper's actions were the sort of "outrageous" and "extreme" acts

---

[2]Moreover, defendant argues that even if Harper's conduct rose to the level of a hostile work environment, defendant is nevertheless entitled to summary judgment based on the *Ellerth/Faragher* affirmative defense. As stated by the Supreme Court:

> An employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee. When no tangible employment action is taken, a defending employer may raise an affirmative defense to liability or damages, subject to proof by a preponderance of the evidence. *See* FED. R. CIV. P. 8(c). The defense comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise.

*Faragher*, 524 U.S. at 807. Defendant, as the party moving for summary judgment, has the burden of proving both elements necessary to this affirmative defense. *Watts v. Kroger Co.*, 170 F.3d 505, 509-510 (5th Cir. 1999).

Although defendant did not have a standing policy regarding sexual harassment when plaintiff was hired, it instituted a policy in 1999 and updated it in 2002. ((MOT. FOR SUMM. J. Ex. 2.) The policy in place in 2002 clearly defined sexual harassment as "unwelcome sexual conduct of any nature that creates an offensive or hostile work environment or unwelcome sexual conduct that is made a condition of working at the employer." (MOT. FOR SUMM. J. Ex. 2.) The policy also directs any employee who believes he or she has been harassed to report the incident immediately to his supervisor or, if the supervisor was involved in the harassment, to the personnel manager, executive vice-president or even the company president. (MOT. FOR SUMM. J. Ex. 2.) A separate section encourages all employees who have witnessed sexual harassment to report the incident. (MOT. FOR SUMM. J. Ex. 2.)

Failure of an employee to utilize complaint procedures due to fears or perceived repercussions diminishes the effectiveness of Title VII and its protections. *See e.g. Young v. R. R. Morrison and Son, Inc.*, 159 F. Supp 2d 921, 926 (N.D. Miss. 2000). The court harbors serious doubts that plaintiff acted reasonably in reporting Harper's behavior but abandoning her job before affording defendant the opportunity to take corrective action. Because the plaintiff has failed to establish that the conduct was sufficiently severe or pervasive, however, the court does not address whether the *Faragher/Ellerth* defense applies.

that give rise to liability for intentional infliction of emotional distress under Mississippi law. *Speed v. Scott*, 787 So. 2d 626, 630 (2001) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 976, 982 (N.D. Miss. 1996) (acts must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"). Although an employer may be liable for injuries if it knew or should have known about the damaging conduct, *see Jones v. Toy*, 476 So. 2d 30, 21 (Miss. 1985), plaintiff did not report Harper until July 8 or 9, 2003, and the court also concludes there is no genuine issue of material fact regarding whether the employer had sufficient notice of Harper's conduct to impose vicarious liability. Accordingly, plaintiff's state law claims fail, as well.

## **CONCLUSION**

It is the finding of this court, on the basis of the evidence submitted by the parties in support of and opposition to the instant motion, that the defendant's motion for summary judgment should be granted. A separate order in accordance with this opinion will issue this day.

This the 26th day of April 2005.

                                                /s/ S. Allan Alexander
                                        UNITED STATES MAGISTRATE JUDGE